# PIERCE *v.* FIRST NATIONAL FIRE INSURANCE COMPANY.

# PIERCE *v.* COMMERCIAL FIRE INSURANCE COMPANY.

# PIERCE *v.* FIRST NATIONAL FIRE INSURANCE COMPANY.

# PIERCE *v.* COMMERCIAL FIRE INSURANCE COMPANY.

---

CORPORATIONS; CONTRACTS; MASTER AND SERVANT.

In an action against two insurance companies for breach of an alleged contract made by a person who was the president of one of the companies and vice president of the other, whereby the plaintiff was employed as business manager of the two companies at a specified salary for three years, the trial court properly directs a verdict for the defendants where it appears that the plaintiff at the beginning of the negotiations resulting in his employment was informed that the officer negotiating with him had no authority to make the contract without the express approval of the governing boards of the companies; that neither corporation knew until more than three months after the plaintiff entered their employment of the terms of the contract: that shortly thereafter, in response to his request for official action regarding his status, a resolution was passed fixing his salary at a specified monthly sum until a meeting of the board, to be held about six months thereafter, notice of which resolution was received by the plaintiff without protest, and that shortly fol-

lowing such meeting his services were dispensed with. (Distinguishing *Russell* v. *Washington Sav. Bank,* 23 App. D. C. 398.)

Nos. 2982, 2983, 2984, and 2985. Submitted February 5, 1917. Decided April 2, 1917.

HEARING on appeals by the plaintiff from judgments of the Supreme Court of the District of Columbia in four actions to recover damages for breach of an alleged contract of employment.                                      *Affirmed.*

The COURT in the opinion stated the facts as follows:

These suits were brought by appellant, Frederick E. Pierce, against the appellees, the First National Fire Insurance Company and the Commercial Fire Insurance Company, to recover for an alleged breach of contract to employ him as their joint office manager for a period of three years from January 1st, 1914, at the rate of $5,000 per year. A month's salary first was sued for, the later suits being for breach of the contract as a whole.

In his declaration appellant alleges that on September 15, 1913, the appellee companies agreed to employ him as joint office manager at a salary of $350 per month until January 1st, 1914, and thereafter for the term of three years at the rate of $5,000 per year; that he duly entered upon and continued in the performance of his duties until discharged by the appellees, the First National discharging him on July 8th, 1914, and the Commercial on August 31, 1914.

Appellant, in September of 1913, was a resident of Roselle, New Jersey, and was experienced in the insurance business. Noticing an advertisement of the appellees that they sought the services of an experienced office manager, he answered it, and received a reply dated September 5th, 1913, signed by Mr. Robert R. Tuttle, as vice president of the First National, Mr. Wynne, the president of that company, then being abroad. Mr. Tuttle also was president of the Commercial. In this letter appellant was given some information concerning the two companies and was invited to come to Washington, with the view of

being employed as general office manager.   On September 12th, following, appellant came to Washington and interviewed Mr. Tuttle, whom he found in the office of the Commercial, which adjoined and communicated with the office of the First National.   Mr. Tuttle expressed the view that appellant would be able to fill the position.   Appellant then stated that he would not care to accept it unless he could have a definite term of employment of at least three or five years.   Mr. Tuttle, according to the testimony of appellant, "said that he had no authority to make a contract verbally without the ratification of the finance committee and the board."   To this appellant replied that he did not wish to close the deal until the matter "was fully decided." Mr. Tuttle then informed him that as he was the sole officer of the two companies then present in Washington, he could not have a meeting of the board until the following Monday, which would be on the 15th of September.   Further discussion resulted in a tentative agreement with Tuttle that if appellant would come until the 1st of January at $350 per month, "if he then made good he would get $5,000 per year and be employed for at least three years."   Appellant replied that such a contract would be satisfactory, but that he "would not come until he was assured by Tuttle in writing that the thing had been ratified and that the thing was official."   Mr. Tuttle said he would know by Monday, after the meeting of the board.   Appellant returned to New Jersey, and on Monday, September 15th, received a telegram from Mr. Tuttle suggesting that he report for work later, and concluding with the words:   "You are engaged according to our conversation."   This telegram was followed by a letter, signed by Mr. Tuttle as vice president of the First National, reading as follows:

Confirming my telegram to you to-day, you are engaged according to our conversation, at $350 per month until January first, after which your salary will be $5,000 per year for three years.

Hoping to see you next Monday and with kind personal regards, I am,

Very truly yours.

On the following Monday, that is on September 22d, appellant reported for duty, but it quite clearly appears from his testimony that no duties were assigned him until the 25th, when he was given certain papers in which his duties were outlined, and which "were given to plaintiff (appellant) as his authority as office manager to act." On the day before, that is, on September 24th, at a meeting of the executive committee of the First National, the employment of appellant as office manager of that company and the Commercial Fire Insurance Company, "on joint expense at the rate of $4,200 per year until January 1st," was authorized. Appellant, however, testified that he had no knowledge of this until early in February of 1914, when, at the suggestion of the president of the First National, he wrote a letter to its board of trustees directing attention to his understanding of the terms of his employment, and saying: "As nothing has been done toward carrying out these promises officially, and as my position, through the action of the finance committee in September, is at present anomalous, I ask that official action be taken with a view to making my status legal with you both in justice to you and to myself and to my family * * *." Thereupon the board of directors of the First National authorized the employment of appellant "as office manager at the rate of $416.66 per month from January 1st, 1914, until the July meeting of this board; the First National to pay its usual proportion of this expense." It is evident from the testimony that this action was communicated to appellant, but it does not appear that he filed any protest thereto. Subsequently appellant was notified by the president of the First National that his services would not be required by that company after the regular meeting of its board of trustees on July 8th. Appellant protested against this action and tendered himself ready and willing to continue in the performance of his duties. In July a subcommittee of the board of directors of the Commercial Fire Insurance Company was authorized to look into its salary accounts, etc., and to report later to the board of directors. At the August, 1914, meeting of the board this subcommittee recommended that the services of appellant be discontinued for the reason that "the details of the office do not

warrant a superintendent of this kind." Attention then was directed to the facts surrounding appellant's connection with the company prior to January of that year, as follows: "Mr. Pierce was employed by the 1″ Nat. F. Ins. Co. & this company jointly as office manager at a salary of $——— per annum, with a promise or some assurance that on & after Jan. 1, 1914 he was to receive $5,000 per annum. About Mch. of this year a letter was presented to the Board of Directors of the 1″ Nat. F. Ins. Co. and we presume also to that of the Commercial calling attention to the salary of $5,000 per annum & asking for a contract for 3 years. Each request was declined for good and sufficient reasons & a salary fixed at $416.66 per month for the two companies."

At the close of this evidence of appellant the court sustained the objection of appellees to the papers offered in evidence upon the ground that no authority had been shown in Mr. Tuttle to bind either corporation, and that there was no contract such as was required by the Statute of Frauds. The court then directed a verdict for appellees.

*Mr. W. C. Clephane* and *Mr. A. O. Clephane* for appellant.

*Mr. Charles A. Douglas, Mr. Thomas Ruffin, Mr. Bates Warren, Mr. Charles S. Douglas.* and *Mr. Hugh H. Obear,* for appellee Commercial Fire Insurance Company, and *Mr. James S. Easby-Smith* and *Mr. James B. Archer,* for the appellee First National Fire Insurance Company, in their brief cited:

*Billingslea* v. *Ward,* 33 Md. 48; *Buhl* v. *Stephens,* 84 Fed. 922; *Caldwell* v. *Mutual Reserve Asso.* 53 App. Div. 245; *Camacho* v. *Hamilton Bank Note Co.* 2 App. Div. 245; *Carsey* v. *New York L. Ins. Co.* 162 N. Y. 453, 49 L.R.A. 471; Clark, Corp. 495, 497; C. J. sec. 306, p. 638; 10 Cyc. 903; *Dumphy* v. *Ryan,* 116 U. S. 703; *Fontaine* v. *Bush,* 40 Minn. 101; *Hamilton* v. *Thirston,* 93 Md. 213; *Hotchkiss* v. *Ladd,* 36 Vt. 593; *Hunt* v. *Ford,* 142 Mo. 283, 41 L.R.A. 823; *Laird* v. *Michigan Lub. Co.* 153 Mich. 52, 17 L.R.A. 177; *Llewellin* v. *Aberdeen Brewing Co.* 65 Wash. 322, 25 L.R.A. 48; *May* v. *Sloan,* 101

U. S. 231; *Merchants Bank* v. *State Bank,* 10 Wall. 604; *Morgarth* v. *Smouse,* 103 Md. 463; *McDonald* v. *Yungbluth,* 46 Fed. 836; *Nephero* v. *Michigan C. R. Co.* 128 Mich. 602; *Peterson* v. *Mille Lacs Co.* 51 Minn. 90; *Philip Carey Co.* v. *Thyson,* 39 App. D. C. 233; *Rathbun* v. *Snow,* 123 N. Y. 343; *Rennie* v. *Mutual L. Ins. Co.* 176 Fed. 202; *Reupe* v. *Grain Co.* 126 Iowa, 632; *Russell* v. *Wash. Sav. Bank,* 23 App. D. C. 398; R. C. L. secs. 436, 437, 635, 636; *Semmes* v. *Worthington,* 38 Md. 298; *Sinclair* v. *Investor's Syndicate* (Minn.) 146 N. W. 1109; *Third Nat. Bank* v. *Steele,* 129 Mich. 434; *Thomas J. Baird Ins. Co.* v. *Harris,* 209 Fed. 291; *United States* v. *Behan,* 110 U. S. 338; *Wait* v. *Nashua Armory Asso.* 60 N. H. 581, 14 L.R.A. 356; *Wolf and Wife* v. *Corby,* 30 Md. 356.

Mr. Justice ROBB delivered the opinion of the Court:

At the outset of the negotiations leading up to the employment of appellant he was informed that Mr. Tuttle had no authority to make the contract suggested by appellant without the express approval of the governing boards of the two corporations to be affected thereby, and no attempt has been made to prove that Mr. Tuttle's authority as president of one corporation and acting president of the other was broader than he represented it to be. Indeed, the record is silent as to his actual powers. There is no evidence that either corporation knew or had any reason to know until after January 1st, 1914, what had taken place between appellant and Mr. Tuttle. The action of the governing board of the First National under date of September 24th, 1913, authorizing the employment of appellant until January 1st, following, at $4,200 per year, strongly indicates to the contrary. It is significant that appellant did not enter upon the actual performance of his duties until the day following this action. It is still more significant that the record fails to show that any change thereafter was made in appellant's status until his communication of February 12th, which resulted in the action of the board of directors of the First National on February 24th, 1914, authorizing his employment "at

the rate of $416.66 per month from January 1st, 1914, until the July meeting of this board." Indeed, in that communication appellant directed attention to the fact that nothing had been done toward carrying out the promises made to him by Mr. Tuttle, which statement and the action of the board thereon warrant the assumption that until this action of the board his salary had not been changed. By this action of the board his employment was not authorized beyond its July meeting, and the record fails to show any protest by him until after his services were dispensed with. This is not a case, therefore, where a by-law of a corporation is relied upon to avoid an act within the apparent powers of an agent of that corporation, for here the lack of authority to bind the corporation was fully disclosed at the outset of the negotiations. And, knowing of such lack of authority, it was incumbent upon appellant to ascertain for himself that the tentative agreement either had been expressly ratified by the corporations affected or that its terms had been made known to and acquiesced in by them. There is no evidence warranting a conclusion that either of these conditions existed. The evidence is quite to the contrary.

*Russell* v. *Washington Sav. Bank,* 23 App. D. C. 398, is not in point. That was a suit by a firm of attorneys to recover for professional services rendered a bank, and the defense was that the vice president who employed the plaintiffs had no right to act for the bank. The court ruled that if the president of the bank, under the scope of his general authority, had the right to employ counsel to represent the bank in pending or prospective litigation, any other officer acting for or in the place of the president had the same authority "in cases of emergency arising during his incumbency of the office and demanding prompt action by him." In other words, that decision merely recognizes the general rule that while the duties of officers and agents of a corporation may be prescribed or limited by its charter or by-laws and regulations, yet in the absence of specific limitations brought to the knowledge of those who deal with them, or of which those who deal with them are bound to take notice, the officers of a corporation as its agents are authorized

to bind the corporation to third parties *so long as they act within the ordinary scope of their duties.* The employment of counsel in an emergency clearly comes within the ordinary scope of the duties of the president of such a corporation. The contract made in the Russell Case related to matters that normally fell within the scope of the authority of the officer representing the corporation. Here, on the contrary, not only was appellant informed of the agent's lack of authority to bind his principals, but the very nature of the contract which appellant sought was such as to put him upon inquiry concerning the actual authority of the agent. *Philip Carey Co.* v. *Thyson,* 39 App. D. C. 233. There is a vital difference between employing an attorney to represent a bank in an emergency and the employment for a term of years of a business manager of an insurance company, one of its most important officers. The former is a contract of an ordinary character, the latter one of extraordinary character.

It follows that the action of the court in directing a verdict was right and that the judgment must be affirmed, with costs.

*Affirmed.*